UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TEMA MITCHELL-ROBERTSON,

    Plaintiff,

v.                                                      Case No: 3:15-cv-135-J-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Tema Mitchell-Robertson, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, Factual Background and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed applications for disability, DIB, and SSI in April 2010 and June 2013. (Tr. 171-78, 201-03, 215-19). Plaintiff's applications were denied initially and on reconsideration. (Tr. 81-83, 87-87A, 204-13). A hearing was held before Administrative Law Judge Kelley Fitzgerald (the "ALJ") on August 12, 2011. (Tr. 970-1000). The ALJ thereafter entered a decision finding Plaintiff not disabled. (Tr. 56-70). The Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ. (Tr. 76-80). The ALJ held a second hearing on August 14, 2013, and thereafter issued a new decision on September 25, 2013, finding Plaintiff not disabled. (Tr. 18-43, 1001-27). The Appeals Council denied Plaintiff's request for review on December 3, 2014. (Tr. 11). Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on February 5, 2015. The parties having filed memoranda of law in support of their positions, this case is ripe for review.

### D. Factual Background

Plaintiff was forty-six years old on the date of the ALJ's decision. (Tr. 41). Plaintiff has three years of college education and previous work as a school bus driver and courier. (Tr. 41, 43). Plaintiff alleged disability beginning October 30, 2009, due to degenerative joint disease, degenerative disc disease of the lumbar spine, arthritis in the right hip, and foraminal encroachment. (Tr. 234).

**E. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 30, 2009, her alleged onset date. (Tr. 24). At step two, the ALJ found that Plaintiff has the following severe impairments: disorders of the spine, history of right shoulder impingement, obesity, hypertension, migraine headaches, disorders of the left hip, and affective disorders. (Tr. 24). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with no more than occasional climbing of ramps and/or stairs, balancing, stooping, kneeling, crouching, crawling. No climbing ladders, ropes, and scaffolds. No concentrated exposure to hazards (machinery, heights, etc.). No driving. The claimant is limited to no more than simple, routine, repetitive tasks. The claimant needs a hand held assistive device for walking.

(Tr. 31). At step four, the ALJ found that Plaintiff was incapable of performing her past relevant work as a school bus driver and courier. (Tr. 41). At step five, the ALJ relied on the testimony of a vocational expert to find that could work as a document preparer, addresser, or telephone quotation clerk. (Tr. 42). The ALJ concluded that Plaintiff has not been under a disability from October 30, 2009, through the date of the ALJ's decision, September 25, 2013. (Tr. 42-43).

**II.   Analysis**

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by failing to adequately evaluate medical opinions from Linda Wilson, D.O., one of Plaintiff's treating physicians, due to the ALJ's failure to realize that Dr. Wilson had changed her last name to "Wilson" from "Manning-

Dimmit" during the time she was providing treatment to Plaintiff; and (2) whether the ALJ erred by failing to provide "good cause" for rejecting the medical opinions offered by Dr. Wilson in an Affidavit. As the issues raised by Plaintiff are both related to the ALJ's treatment of Dr. Wilson's opinion, the Court addresses these issues in conjunction.

Before addressing the issues, however, the Court reviews the evidence of record pertaining to Plaintiff's visits to Dr. Wilson. The record reflects that Plaintiff began treatment with a "Linda Manning-Dimmit, D.O.," on June 12, 2012 for complaints of neck and back pain. Diagnoses offered after the examination included disc herniation of the lumbar spine, unchanged shoulder impingement, osteoarthritis of the hip and cervicalgia. (Tr. 933). Follow-up treatment was then provided by Dr. Manning-Dimmit on July 26, 2012. (Tr. 926).

Dr. Manning-Dimmit opined on July 27, 2012 that Plaintiff was incapable of the performance of even "minimum sedentary activity" due to her multi-level lumbar degenerative disc disease and cervical radiculopathy. (Tr. 812). An August 10, 2012 MRI of the cervical spine was normal. (Tr. 840). On November 21, 2012, Dr. Manning-Dimmit opined that Plaintiff was experiencing severe pain in her hips on a constant basis, could not lift more than 5 pounds and cannot sit or stand for linger than 10-15 minutes unless she was medicated with narcotics. (Tr. 814). Dr. Manning-Dimmit provided treatment to Plaintiff on October 29, 2012, and November 21, 2012.

The record reflects that Plaintiff visited a "Linda Wilson, D.O.," for the first time on December 26, 2012. Plaintiff returned for treatment to Dr. Wilson on January 29, 2013, February 26, 2013, March 26, 2013, April 26, 2013 and May 29, 2013. These treatment notes consistently reveal diagnoses to include lumbar disc herniation, osteoarthritis of the hip, migraines and chronic pain. (Tr. 858- 926).

Dr. Wilson examined Plaintiff on June 28, 2013. At that time she reported chronic low back and neck pain that was not controlled with medication. It was also noted that she had tested positive for marijuana. (Tr. 941). Diagnoses included inadequately controlled cervical radiculopathy, cervicalgia, migraines, osteoarthritis of the hips and chronic pain and well controlled lumbar spine pain and hypertension. (Tr. 951). Treatment was also provided by Dr. Wilson on July 29, 2013. (Tr. 936).

On August 14, 2013, Dr. Wilson provided an Affidavit addressing the severity of Plaintiff's impairments and resulting functional limitations. (Tr. 817). Dr. Wilson noted that she began treating Plaintiff in June of 2012 for impairments to include chronic pain, low back and neck pain, cervicalgia, osteoarthritis of the hip and migraine headaches. She opined that these impairments would not allow Plaintiff to sit or stand for longer than 10 minutes at a time or lift more than 5-10 pounds on a regular basis. She also noted that these opinions were consistent with the severity of Plaintiff's impairments and resulting functional limitations. She noted that she began treating Plaintiff in June of 2012 for impairments to include chronic pain, low back and neck pain, cervicalgia, osteoarthritis of the hip and migraine headaches. She opined that these impairments would not allow Plaintiff to sit or stand for longer than 10 minutes at a time or lift more than 5-10 pounds on a regular basis. She also noted that these opinions were consistent with the severity of Plaintiff's impairments and the objective and clinical findings upon examination. She also offered the following:

> In light of the combination of her impairments I do not believe that Plaintiff could engage in even a sit down job with the allowance to alternate her position between sitting and standing on an 8 hour a day, 5 day a week basis. Specifically, her chronic pain and hip impairment requires her to periodically lie down in a reclined position to help alleviate some of the pain. Additionally, the unpredictable nature of her migraines significantly affects her ability to be a reliable employee.

(Tr. 817).

Plaintiff challenges the ALJ's assessment of Dr. Wilson's opinions on several grounds. Plaintiff contends that Dr. Wilson is the same person as Dr. Manning-Dimmit, a fact the ALJ failed to ascertain given his decision to accord weight separately to the opinions of Dr. Wilson and Dr. Manning-Dimmit. (Doc. 14 p. 12). Plaintiff argues that the ALJ's mistaken belief that Dr. Wilson was a different from Dr. Manning-Dimmit taints the whole of the ALJ's analysis of the medical opinions offered by Dr. Wilson. (Doc. 14 p. 12). In addition, Plaintiff argues that the ALJ failed to properly consider Plaintiff's treatment relationship with Dr. Wilson or to give good cause for rejecting the opinions offered by Dr. Wilson. (Doc. 14 p. 14-25).

In response, Defendant does not concede that Dr. Wilson and Dr. Manning-Dimmit are the same person, but argues that any mistake as to this point is irrelevant as the ALJ properly assessed the opinions signed under the name Dr. Wilson or Dr. Manning-Dimmit. (Doc. 18 p. 6). Defendant argues that while the ALJ did not explicitly discuss the longitudinal treating relationship between Dr. Wilson and Plaintiff, the ALJ's discussion of the medical evidence and the reasoning for the weight given to the various medical opinions demonstrates that the ALJ considered Dr. Wilson a treating physician and considered the treating relationship in accordance with the regulations. (Doc. 18 p. 7). Defendant contends the ALJ provided good cause for not giving Dr. Wilson's opinions any significant weight and these reasons are supported by substantial evidence of record. (Doc. 18 p. 7).

In assessing the medical evidence in a case, the ALJ is required to specify the weight given to a treating physician's opinion or state the reasons for giving the opinion no weight. *Belge v. Astrue,* 2010 WL 3824156, at *3 (M.D. Fla. Sept. 27, 2010). Failure to clearly articulate the reasons for giving less or no weight to a treating physician's medical opinion is reversible error.

*Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th Cir. 1997). In making the determination of the amount of weight to accord a medical source's opinion, the ALJ may consider several factors' including: examining relationship, treatment relationship, nature and extent of treatment relationship, supportability, consistency, specialization and other factors. *See* 20 C.F.R. § 404.1527(c). If an ALJ concludes that a treating physician's medical opinion should be accorded less than substantial or considerable weight, "good cause" must be shown for discounting it. *Lewis v. Callahan*, 125 F. 3d at 1440. "The Eleventh Circuit has concluded that "good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

In his opinion, the ALJ analyzed the opinion evidence signed by Dr. Wilson and Dr. Manning-Dimmit as follows:

> Dr. Dimmit provided a medical source statement indicated that the claimant is incapable of sedentary work due to multilevel degenerative disc disease in the lumbar spine and cervical spine radiculopathy (Exhibit 37F/3). During a July 28, 2012, follow-up the claimant presented to Dr. Dimmit with disability paperwork to fill out. The claimant also provided Dr. Dimmit her worker's compensation paperwork, which indicated she was already determined to be disabled (Exhibit 42F/68). Yet, August 2012 treatment notes note a normal cervical MRI (Exhibit 38F/21, 42F/38, 43F/13-14). In addition, the claimant evidences no difficulty with ambulation (Exhibit 42F/60). She had no problems with ambulation in October 2012. The only intervention suggested regarding her cervical problems was to use a soft collar by Chidi Uche, M.D. (Exhibit 42F/61). In November 2012, Dr. Dimmit indicated the claimant was disabled due to degenerative disc disease and cervical spine radiculopathy and believed the claimant would never recover sufficiently to return to work. Dr. Dimmit also indicated the claimant was unable to sit or stand for more than fifteen minutes unless medicated with narcotic (Exhibit 38F/2). This is not credible. Dr. Dimmit's treatment notes reveal no problems with ambulation or motor strength. Furthermore, later December 2012 treatment notes reveal no pain on palpation of the back. The claimant also reported her right shoulder pain was controlled and she was not experiencing any headaches (Exhibit 42F/34-37). These objective

examination findings do not support the conclusion that the claimant would be precluded from work within the above mentioned limitations. Moreover, Dr. Dimmit repeatedly relies on radiculopathy as a basis for the claimant's inability to work, but as noted above, Dr. Aranke, the neurologist, reported that any radiculopathy is inactive. Therefore, I have not assigned any significant weight to the opinions from Dr. Dimmit.

Dr. Wilson provided an affidavit indicating that the claimant could not engage in even a sit-down job with the allowance to alternate positions between sitting and standing on an 8-hour a day, five day a week basis. Dr. Wilson indicated that her chronic pain and hip impairment required her to periodically lie down in a reclined position. Dr. Wilson also noted the unpredictability nature of her migraine headaches would affect her ability to be a reliable employee (Exhibit 22E/3). I have not assigned any significant weight to Dr. Wilson's affidavit and opinion. Despite her "chronic pain" and "hip impairment," Dr. Wilson's treatment notes indicate that medications control her pain (Exhibit 42F/6), and Dr. Wilson did not address the claimant's use of illicit drugs on her ability to continue to use pain medication. The claimant reports the ability to walk and lift objects and she demonstrates full range of motion of the bilateral shoulders and hips (Exhibit 42F/20). Overall, the claimant has undergone multiple diagnostic testing procedures with findings that are either minimal or negative. Likewise, clinical findings on examination have been minimal. Dr. Wilson offered no rationale as to why she believed that such significant limitations could reasonably be expected in light of such abnormalities.

(Tr. 39-40).

Here, the Court finds it appropriate to remand this case to allow the ALJ to determine if Dr. Manning-Dimmit and Dr. Wilson are, in fact, the same person and to reevaluate the opinions if such is the case. It is clear from the excerpts above that the ALJ believed that Dr. Manning-Dimmit and Dr. Wilson were different people and treated the evidence as if they came from two separate sources. In evaluating opinion evidence, a key consideration is the nature and extent of the treatment relationship. *See* 20 C.F.R. § 404.1527(c). An ALJ's mistaken belief that medical evidence and opinions come from multiple sources, when they in fact come from the same source, is a factual error that fundamentally undermines the ALJ's analysis of the evidence from those sources, especially where, as here, the ALJ is giving such sources diminished weight. While the

ALJ specifically addressed the opinion evidence signed under the names of both Dr. Manning-Dimmit and Dr. Wilson and thoroughly explained her reasoning for choosing to assign these opinions no significant weight, the Court cannot say that this treatment obviates any error that may have arisen from the ALJ's mistake.

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 18, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties